# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDI BULL | § § § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-2002-S |
| | § § § | |
| CITY OF ROWLETT | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant City of Rowlett's ("Defendant" or "City") Motion to Dismiss [ECF No. 6]. For the reasons set forth below, the Motion is granted in part and denied in part.

### I. BACKGROUND

Beginning on November 25, 2013, Plaintiff Brandi Bull ("Plaintiff") was employed in the City's Human Resources ("HR") Department. Compl. ¶ 3.1. According to Plaintiff, she "soon realized that she was working in a very hostile work environment created and perpetuated by [HR] Director John Murray's constant unprofessional behavior." *Id.* Murray allegedly made "comments about staff members' breasts and buttocks," told people that "he hired his staff based on their '8x10 pictures,'" "walk[ed] around with no shirt on and . . . ask[ed] his staff, including [Plaintiff], to touch his pecs and biceps," and "asked [Plaintiff] about her personal sex life." *Id.*

In the summer of 2014, Murray allegedly began having an affair with Wendy Badgett, the City's Assistant Director of Finance. *Id.* ¶ 3.2. According to Plaintiff, "Murray slowly started shifting responsibility from . . . Badgett's department to the [HR] department." *Id.* ¶ 3.3. Plaintiff claims that the situation became "dysfunctional" and that she lived in fear of retaliation, as Murray

allegedly stated several times that he would "rip the heart out of anyone that crossed him with his bare hands." *Id.*

In May of 2015, Plaintiff requested a meeting with Assistant City Manager Jim Proce. *Id.* In the meeting, Plaintiff complained about the alleged sexual harassment, hostile work environment, and violation of City policy by Murray. *Id.* Proce asked Plaintiff and another employee to talk to City Manager Brian Funderburk. *Id.* Plaintiff and the other employee had a meeting with Funderburk. *Id.* Plaintiff claims that Funderburk was "reluctant to believe" the allegations and "did not want to take any action against . . . Murray." *Id.*

City Attorney David Berman learned of the complaints and hired an external investigator/attorney, Lu Pham, to conduct an investigation. *Id.* ¶ 3.4. After three days of interviews with more than ten employees, Pham submitted a report advising Defendant and Funderburk to terminate Murray's employment. *Id.* Funderburk allegedly called Pham asking if there was any other way to address the issue. *Id.* In May of 2015, Murray provided his resignation and retired in lieu of being terminated. *Id.* Plaintiff contends that "Funderburk was resentful that he was forced to terminate . . . Murray." *Id.* According to Plaintiff, Funderburk began retaliating against her for her role in the investigation. *Id.*

In July of 2015, Funderburk asked Plaintiff and a co-worker, Jessica Perkins, to take a drug test. *Id.* ¶ 3.5. He also placed the two women under investigation because one of their co-workers allegedly made comments about potential drug use. *Id.* Plaintiff wrote a letter to the Interim HR Manager, Irene Kasujji, stating that the investigation and drug test request were against City policy. *Id.* Nevertheless, Plaintiff alleges that she and Perkins "were forced to submit to a drug test and polygraph test under threat of termination." *Id.* ¶ 3.7. Plaintiff refused the tests. *Id.* Perkins took the tests and passed both. *Id.*

Plaintiff next contends that Funderburk mishandled an incident with Chief of Police Mike Brodnax. On July 19, 2017, Brodnax came into the HR building. *Id.* ¶ 3.9. While in the building, Brodnax noticed an investigator from the Dallas Police Department was sitting in the HR Generalist's office. *Id.* The investigator was reviewing the file of an employee who had voluntarily resigned and was eligible for rehire with the City. *Id.* Brodnax asked the investigator whose file she was reviewing, and she responded that it was police officer Julian McDaniel's file. *Id.* Brodnax allegedly stated that "he heard a 'rumor' that . . . McDaniel quit because [the job] 'interfered with his dope smoking'" and that "if [McDaniel] wanted to come back to [Brodnax's] department, he would need to pass a polygraph on his drug use." *Id.* The investigator allegedly wrote down this information. *Id.* Plaintiff states that upon hearing about this incident, she was "overcome with extreme anxiety" because it created liability for the City. *Id.* ¶ 3.10. Plaintiff sent an email containing her concerns to the new HR Director, Richard Jones. *Id.* She asked him to pass the information along to Funderburk. *Id.* Plaintiff informed Jones and Funderburk that Brodnax's conduct violated the City's Policy Manual. *Id.* Plaintiff alleges that Brodnax was not reprimanded. *Id.* ¶ 3.11.

Plaintiff alleges further misconduct by Funderburk in connection with the Municipal Court. According to Plaintiff, Judge Pam Liston hired a good friend of hers, Dretha Burris, in September 2017. *Id.* ¶ 3.12. Plaintiff claims that Judge Liston is not responsible for the Municipal Court's hiring process. *Id.* Funderburk allegedly approved Burris's salary to be "well above the minimum" and "rushed" Burris's start date. *Id.* Again, Plaintiff complained to numerous management personnel, including Jones, but Plaintiff contends that she "was instructed to do as Judge Liston requested." *Id.*

Plaintiff next alleges that, in 2017, a Rowlett police officer notified HR of sexual harassment taking place within her department. *Id.* ¶ 3.14. Plaintiff requested that HR investigate, but Jones allegedly refused to do so. *Id.*

In 2017, Independent Management Consultant Riley Harvill conducted an assessment with court staff. *Id.* ¶ 3.15. He allegedly concluded that the environment was hostile and that the court staff was afraid of Judge Liston. *Id.* Funderburk received a copy of the report but allegedly did nothing to remedy the situation. *Id.*

In September of 2017, Jones allegedly informed Plaintiff that he was getting pressure from Funderburk to terminate her. *Id.* ¶ 3.16. At this time, Plaintiff again complained about the hostile work environment cultivated by Funderburk in retaliation for Plaintiff's complaints against Funderburk "or his management friends." *Id.* Plaintiff told Jones that work was "becoming unbearable" and that "she would cry every morning on her way to work." *Id.*

On October 3, 2017, Jones gave Plaintiff two reclassification packets that Badgett had submitted to Funderburk. *Id.* ¶ 3.17. The purpose of the packets was to reclassify positions with title changes and pay increases. *Id.* The packets supposedly were authored by Badgett, but Plaintiff believed, based on her prior working experience with Murray and Badgett, that Murray authored the packets. *Id.* Plaintiff informed Badgett, Jones, and Funderburk that she questioned the authenticity of the packets and complained orally and in writing that Badgett had distributed confidential information to a former employee of Defendant in violation of the Texas Government Code.[1] *Id.* ¶ 3.18. Plaintiff alleges that Funderburk "failed to conduct a reasonable and proper investigation and ignored [Plaintiff's] complaint." *Id.* Two days later, on October 5, Funderburk told Plaintiff that he was terminating her. *Id.* The termination became official on October 6. *Id.*

---

[1] Plaintiff alleges that she again reported Badgett's conduct to Funderburk on October 5, 2017. Compl. ¶ 3.18.

The City Secretary's office lists all terminations, along with the reasons for each termination, for the last three years. *Id.* ¶ 3.19. Plaintiff and one other employee, Kim Wilson, were listed as "Involuntary Termination" for "Misconduct." *Id.* According to Plaintiff, they are the only two employees to ever be terminated for misconduct. *Id.* Plaintiff contends that she and Wilson were listed this way because they both refused to sign Defendant's Separation Agreement and because they retained an attorney. *Id.* ¶ 3.20.

Based on the foregoing allegations, Plaintiff asserts three causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"): (1) sexual harassment and sexually hostile work environment, (2) retaliation, and (3) gender discrimination. She also asserts two causes of action under Chapter 21 of the Texas Labor Code ("Chapter 21"): (1) sexual harassment and sexually hostile work environment and (2) retaliation.[2] Finally, she brings a cause of action for a violation of the Texas Whistleblower Protection Act. Defendant moves to dismiss all of Plaintiff's causes of action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    RULE 12(b)(6)

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted

---

[2] Because the law governing claims under Chapter 21 and Title VII is identical, the Court will refer only to Title VII throughout its analysis. However, the Court's findings apply to Plaintiff's Chapter 21 claims as well. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).[3]

### III. ANALYSIS

#### A. *Sexual Harassment and Sexually Hostile Work Environment (Title VII and Chapter 21)*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish "that she was sexually harassed in violation of Title VII by proving, inter alia, that the

---

[3] The Court notes that many of the cases cited by Defendant in its Motion relate to summary judgments. A case involving a summary judgment motion is not authority for dealing with a Rule 12(b)(6) motion unless the case specifically states or holds that a party has failed to allege, assert, or set forth sufficient facts to state a claim upon which relief can be granted.

6

harassment created a hostile or abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001)). To establish a hostile work environment claim, a plaintiff must show that: "(1) she is [a] member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of [the plaintiff's] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Id.* (quoting *Woods*, 274 F.3d at 298). "[E]mployees bringing a Title VII sexual harassment case alleging that a supervisor with immediate (or successively higher) authority over the employee harassed the employee need only satisfy the first four elements of [this] test . . . ." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

Defendant does not contest whether Plaintiff was a member of a protected group. With respect to the second, third, and fourth elements, Defendant argues that all of Plaintiff's harassment allegations are lacking facts to support at least one element. As to the final element, Defendant seemingly concedes that Plaintiff's alleged harasser was her supervisor. However, Defendant argues that it has an affirmative defense to vicarious liability.[4]

The Court finds that Plaintiff's pleadings do not adequately allege the second and third elements—uninvited sexual harassment based on sex. The Fifth Circuit has "defined 'unwelcome sexual harassment' as 'sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee.'" *Marquez v. Voicestream Wireless Corp.*, 115 F. App'x

---

[4] Because "a successful affirmative defense" does not "appear[] clearly on the face of the pleadings," the Court declines to dismiss Plaintiff's case on this basis. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

699, 701 (5th Cir. 2004) (quoting *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989)). Conduct that has been found to constitute sexual harassment includes propositioning an individual for sex, touching and fondling, promoting a sexually charged environment, and implying or stating that an individual is incompetent because of her sex. *See Pfeil v. Intecom Telecomms.*, 90 F. Supp. 2d 742, 748 (N.D. Tex. 2000) (collecting cases); *see also Marquez*, 115 F. App'x at 701-02 (finding no evidence of unwelcome sexual harassment where defendant did not make sexual advances, request sexual favors, or engage in verbal or physical conduct that was sexual in nature).

Plaintiff's allegations regarding Murray's conduct are sufficient to satisfy the second and third elements. Plaintiff alleges that Murray touched staff members' breasts, asked Plaintiff about her personal sex life, and asked Plaintiff to touch his pecs and biceps. These facts, taken as true, are adequate to satisfy Plaintiff's burden to plausibly allege unwelcome harassment based on sex. *See, e.g., Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 805 (5th Cir. 1996) (affirming entry of judgment for plaintiff on hostile work environment sexual harassment claim where supervisor commented on and asked about plaintiff's sex life). However, because these actions occurred more than 300 days before Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), they are time-barred unless Plaintiff can establish a "continuing violation." *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("A claimant must file a Title VII discrimination claim with the EEOC within 300 days of the challenged discrimination."); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) ("[H]ostile environment claims 'will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period.'" (quoting *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002))). For the following reasons, Plaintiff has failed to allege a continuing violation.

Plaintiff's only timely allegations, those regarding purported sexual harassment after Murray's termination, are insufficient to satisfy the second and third elements. Plaintiff alleges that Funderburk tried to force Plaintiff to take a drug and polygraph test, placed Plaintiff under investigation, refused Plaintiff's requests to investigate the sexual harassment complaints of another employee, and refused to take action when Harvill determined that the work environment was hostile. Compl. ¶¶ 3.5-3.7, 3.13-3.15. Plaintiff also alleges that Jones informed Plaintiff that he was getting pressure from Funderburk to terminate Plaintiff and that Funderburk ultimately terminated Plaintiff. *Id.* ¶¶ 3.16, 3.18. Even accepting all of these facts as true, the Court concludes that Plaintiff has not pleaded that she was subjected to harassment based on sex. For instance, Plaintiff does not allege that Harvill concluded that the environment was only hostile for female employees. "When the conduct is equally harsh towards men and women, there is no hostile work environment based on sex." *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010). And, none of the other conduct alleged is analogous to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. *See Marquez*, 115 F. App'x at 701-02; *Pfeil*, 90 F. Supp. 2d at 748.

Even taking the post-Murray incidents in the context of Plaintiff's hostile working environment claim as a whole, the Court concludes that Plaintiff has failed to establish a continuing violation. Therefore, the Court grants Defendant's Motion to Dismiss as to Plaintiff's sexual harassment claims.

### B. *Retaliation (Title VII and Chapter 21)*

To assert a claim of retaliation under Title VII, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria Cty. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004).

As to the first element, an employee has engaged in protected activity when she has either "opposed any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). The Court finds that, at this stage, Plaintiff has pleaded sufficient facts to render it plausible that she engaged in protected activity. Further, Plaintiff has adequately pleaded that Defendant took one or more actions against her that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). And, at this stage, Plaintiff has sufficiently alleged that there is a causal connection between the protected activity and the adverse action. Therefore, the Court denies Defendant's Motion to Dismiss as to Plaintiff's Chapter 21 and Title VII retaliation claims.

### C. *Gender Discrimination (Title VII)*

To establish a prima facie case of gender discrimination under Title VII, a plaintiff must show that: "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999) (citing *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998)). At the motion to dismiss stage, the plaintiff does not have to submit evidence to establish a prima facie case, but she must plead sufficient facts on

all of the ultimate elements of a gender discrimination claim to make her case plausible. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Defendant only attacks the final element of Plaintiff's prima facie case. Defendant contends that Plaintiff failed to plead that similarly situated males were treated more favorably than Plaintiff. The Court disagrees. Plaintiff alleges that she and another female were the only employees ever terminated for misconduct. Compl. ¶ 3.19. She also lists five similarly situated males who were allowed to resign or retire, meaning they, unlike Plaintiff, were eligible for rehire. *Id.* ¶ 3.21. Therefore, the Court finds that Plaintiff has pleaded sufficient facts to make her claim plausible and denies Defendant's Motion to Dismiss as to Plaintiff's gender discrimination claim.

### D. *Texas Whistleblower Act*

The Texas Whistleblower Act prohibits governmental entities from suspending, terminating, or taking other adverse personnel actions against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). "The limitations period to sue under the Whistleblower Act is ninety days after the alleged violation occurred or was discovered by the employee." *Jackson v. Univ. of Tex. Health Sci. Ctr. Police Dep't*, No. 04-03-00553-CV, 2004 WL 572330, at *2 (Tex. App.—San Antonio Mar. 24, 2004, no pet.) (citing TEX. GOV'T CODE ANN. § 554.005). If the employer has a grievance or appeal procedure, however, the employee must initiate action under the employer's grievance or appeal procedures. TEX. GOV'T CODE ANN. § 554.006(a). "Time used by the employee in acting under the grievance or appeal procedure is excluded" from the 90-day period. *Id.* § 554.006(c).

"It is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [herself] out of court." *Funches v. City of Dallas*, No. Civ. A. 3:99-CV-0224-D, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999); *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."). In this case, Plaintiff has pleaded herself out of court. The last action Plaintiff alleges in connection with her Whistleblower Act claim is her termination, which occurred on October 5, 2017, approximately three hundred days before she filed suit on August 1, 2018. Compl. ¶ 4.86. Plaintiff also alleges that, to the extent Defendant had an appeal procedure, she "exhausted all administrative appeals . . . by writing a letter appealing her termination and submitting said letter on the afternoon of October 5, 2017." *Id.* ¶ 4.87.

Based on Plaintiff's current pleadings, she would have been required to file suit in January 2018, 90 days after her termination and 90 days after she fulfilled the requirements of Defendant's appeal procedure.[5] Plaintiff did not file suit until August 1, 2018, so the face of her Complaint establishes Defendant's limitations defense. Thus, the Court grants Defendant's Motion to Dismiss as to Plaintiff's Whistleblower Act claim. However, because Plaintiff contends in her Response that she can "amend the Pleadings to detail what adverse actions occurred in 2018 and/or were discovered in 2018 relating to the Whistleblower [Act] claims," the Court will permit her to replead. Resp. 21.

---

[5] If Plaintiff did not receive a final decision before the 61st day after the date she initiated the procedure, she had two options. First, she could exhaust the applicable procedures, which she claims she did. TEX. GOV'T CODE ANN. § 554.006(d)(1). She had 30 days after such exhaustion to file suit. *Id.* Second, she could terminate the procedure and then sue within the time remaining under the 90-day limitations period. *Id.* § 554.006(d)(2). Under either option, her claims are untimely.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss as to Plaintiff's Title VII and Chapter 21 retaliation claims and Title VII gender discrimination claim. The Court grants Defendant's Motion to Dismiss as to Plaintiff's Title VII and Chapter 21 sexual harassment claims and Texas Whistleblower Act claims and dismisses those claims without prejudice. The Court grants Plaintiff's request for leave to amend. Plaintiff must file an amended complaint no later than April 1, 2019.

**SO ORDERED.**

SIGNED March 4, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**